RENDERED:  JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2026-CA-0267-ME

KELLY KING							APPELLANT

v.			APPEAL FROM FAYETTE CIRCUIT COURT
				HONORABLE LIBBY G. MESSER, JUDGE
				ACTION NO. 22-D-01599-002

KENDRA BROWN							APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND COMBS, JUDGES.

COMBS, JUDGE:  Appellant, Kelly King (King), appeals from the entry of an

Interpersonal Protective Order (IPO) against her.  After our review, we affirm.

On September 26, 2025, Appellee, Kendra Brown (Brown), filed a

petition for order of protection against King, a former partner in a relationship.

The petition alleged that King had been asked multiple times not to contact Brown;

that King had used her large social media following to spread and to elicit hate

speech toward Brown; that there was a separate, ongoing harassment investigation case; that in March 2022, King followed Brown out of a bar and threw a drink on her; that in November 2022, King trespassed on Brown's property and refused to leave until police arrived; that on November 1, 2023, King recorded Brown while jogging and made a harassing TikTok; that in May 2024, King showed up at the funeral of Brown's grandmother despite repeated pleas for no contact; that in September 2025, King recorded and posted a video on TikTok of her (King's) fiancée "licking and rubbing" on Brown's car. Brown stated that she feared for her safety in light of King's numerous attempts to contact and harass her -- as well as King's criminal history.

On February 3, 2026, the family court held a hearing on Brown's petition and entered an IPO on a Form AOC-275.3 against King to remain in effect until February 3, 2029. The accompanying February 3, 2026, calendar order includes more than two single-spaced pages of findings as follow:

> Parties in dating relationship for two years from Jan 2020-Jan 2022. Relationship finally ended in January of 2022. . . .
>
> Clear from the testimony and evidence that this was a violent and tumultuous relationship and there were multiple physical altercations. . . .
>
> There were additional acts or threats of violence that occurred in public at the hands of Ms. King as testified to by Ms. Brown and witnesses including holding her over a railing in a bar to the point that Ms.

Brown was concerned she would fall, throwing drinks on her and her friends or acquaintances, thumping or hitting her in the head with the [*sic*] a balled finger and getting into a physical fight with someone that Ms. Brown was associating with in a bar in front of Ms. Brown, following her and a friend to her house and barging in. These all seem to be surrounding times when Ms. Brown states she would attempt to leave the relationship or spend time with other friends away from Ms. King. . . . [The] **Court finds Ms. Brown's testimony credible and that these additional acts or threats of violence did occur. This certainly would place Ms. Brown in imminent fear of physical injury** . . . .

. . .

By all evidence and testimony, since the end of the relationship in 2022 Ms. Brown has attempted to move on and have no contact with . . . Ms. King and that any contact they have had has been initiated by Ms. King or through mutual friends at the request of Ms. King. . . .

. . .

Ms. King has shown up to Ms. Brown's home on multiple occasions and while Ms. Brown was again generally cordial, she did tell Ms. King to leave and on the second such occasion had to call the police to [*sic*] Ms. King to leave. This is consistent with Ms. Brown filing for an order of protection after these events in November of 2022 which was denied by the reviewing Court at that time.

Two years later, Ms. King continues to engage in conduct directed at Ms. Brown primarily through social media. Ms. King has a history of creating social media content specifically about Ms. Brown and her [King's] other exes. . . .

Since this relationship . . . has ended, Ms. King has engaged in significant tik tok activity regarding Ms. Brown as well.  While she never directly uses Ms. Brown's name, her videos include pictures of Ms. Brown and her new paramour, videos of Ms. Brown running in her neighborhood, tik tok lives specifically about this case and hearings, and made a video . . . of her [King's] partner licking and rubbing on Ms. Brown's car two years after the end of the relationship.  All of these videos which include Ms. Brown's likeness refer to Ms. Brown as "the ex."  She [King] then makes numerous vaguely threatening posts or posts complaining about "the ex" or "exes" generally which are threatening and angry in nature including at least one where she references a serial kill and shows a chainsaw in the back of her car and one where she lists as her favorite activities are harassing exes on Tik Tok.  These posts have solicited responses from her numerous followers some including things like "we will help bury the bodies."

Ms. King states that all of this was just her expressing her first amendment right and no reasonable person would find this to be a threat to their physical safety.  However, the Court finds it telling that Ms. King's paramour expressly stated they would not have made the video of the car if Ms. Brown or others were present in the parking lot, and they would never encourage a group of people to surround and watch them do this or harass Ms. Brown and bully her.  However, Ms. King posted this to a public tik tok account with over 100 thousand followers which did in fact solicit harmful and threatening comments about Ms. Brown.  One does not get to do behind a computer what they know to be harmful and threatening if done in person.

Ms. King's paramour also specifically states that this is Ms. King's "niche" online and that she has culminated [*sic*] this following due to her being real and authentic and sharing her real and authentic experiences

-4-

and feelings.  One does not get to claim their online self is real and authentic and then claim the threatening behavior they demonstrate is not real and should not intimidate the people it is directed at.

While this Court respect's [*sic*] Ms. King's free speech, you can't create and exploit a social media persona that you claim to be "real and authentic" and centers around you being a jilted and potentially violent person obsessively angry with your exes, looking for revenge or retribution and then claim your exes should not fear that you are in fact a violent and jilted ex who continues to be obsessively angry and potentially violent towards them.  Especially not when you have, in fact, been physically violent during the relationship towards that person.

Therefor [*sic*] the Court believes that an Order is necessary to protect against ongoing acts or threats of DV.

(Bold-face emphasis added.)

On February 13, 2026, King filed a motion for additional findings and a motion to alter, amend, or vacate.  The court heard the motion on March 4, 2025, and entered an Amended IPO, checking the box for "dating violence and abuse" on the Form AOC-275.3.

King appeals.  A court may issue an IPO if it "finds by a preponderance of the evidence that dating violence and abuse,[1] sexual assault, or stalking has occurred and may again occur[.]"  KRS[2] 456.060(1).

> The preponderance of the evidence standard is met when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of dating violence and abuse, sexual assault, or stalking. . . .
>
> . . . [F]indings of fact will only be disturbed if clearly erroneous.  Factual determinations are not clearly erroneous if they are supported by substantial evidence.  The test is not whether this Court would have decided a case differently but whether the family court's decision was unreasonable, unfair, arbitrary or capricious.

*Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (internal quotation marks and citations omitted).  Moreover, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court."  *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).  We review questions of law *de novo*.  *Jones*, 617 S.W.3d at 423.

King first argues that the "court's analysis that dating violence may occur again was errant [*sic*] because it was based on certain social media videos that were not introduced into the record."  At the hearing, Brown's counsel played

---

[1] The applicable version of KRS 456.010(2)(a) defines "dating violence and abuse" as "[p]hysical injury, serious physical injury, stalking, sexual assault, strangulation, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault occurring between persons who are or have been in a dating relationship[.]"

[2] Kentucky Revised Statutes.

various TikTok videos on a laptop plugged into the courtroom's HDMI cord. Brown's counsel asked the court: "And when we play these do these get into the record when we play them or do you want me -- ." The court responded: "***Yes, anything that is played through that HDMI is going into the record***." (Video Record (VR) 02/03/26 at 10:05:46:53). Brown testified about the Tiktok videos and introduced screenshots from them as Exhibits. Although the audio can be heard when the TikTok videos are played in the courtroom, the record before us only shows counsel playing the videos on the laptop -- not the videos themselves.

King contends that the court erred by considering evidence that was not admitted into the record because Brown did not introduce the TikTok videos as exhibits -- and that that alleged error is compounded by the fact that the record on appeal does not include the videos. We disagree. King was clearly aware that the court considered the TikTok videos to be in the record. Brown testified about them. King made **no objection** and in fact cross-examined Brown about some of the videos herself. "Kentucky law holds that that where a witness has testified concerning an exhibit, it may be considered part of the record, although not formally introduced. . . . To hold otherwise, would be a 'species of judicial ritualism.'" *Brown v. Paul*, No. 2002-CA-001766-MR, 2003 WL 21512549, at *2 (Ky. App. July 3, 2003) (quoting *Jones v. Driver*, 137 S.W.2d 729, 731 (Ky. 1940)). Moreover, "[i]t has long been held that, when the complete record is not

-7-

before the appellate court, [we] must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). We find no error.

Next, King argues that the evidence does not support the finding that "dating violence may occur again." In essence, she reargues her case. "The predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015). That is exactly what the family court did here as reflected in its detailed findings above. We are satisfied from our review of the record that substantial evidence supports those findings. Thus, we may not disturb them.

King's final argument is that the family court imposed an unconstitutional prior restraint and failed to make sufficient findings to determine whether King's social media posts are protected by the First Amendment. We disagree. *See Wedding v. Harmon*, 492 S.W.3d 150, 155 (Ky. App. 2016) (Where family court entered order prohibiting father from sending emails about parties' divorce and parenting matters, this Court rejected father's prior restraint argument and held that emails were constitutionally-*unprotected* conduct intended to harass, annoy, or alarm mother; injunction was narrowly drawn and best interests of children were supported by limitation on the father's speech.).

In the case before us, the family court made sufficient findings as set forth above. Substantial evidence supports those findings. The court did not believe King's testimony that she believed her TikToks were constitutionally protected speech. The court explained that King cannot claim that her social media persona -- as a jilted, potentially violent, and obsessively angry ex -- is real and authentic, and then reverse that assertion and claim that the threatening behavior she demonstrates is not real -- especially in light of King's violence towards Brown during their relationship.

With respect to King's argument that the IPO is overbroad, it appears that King may have overlooked the amended IPO. The language to which King refers -- "Exes," plural -- is contained in the family court's February 3, 2026, calendar order. However, that is **not** the language in the Amended IPO/AOC Form 275.3 entered on March 4, 2026, which states as follows at page 3:

> ☑ In order to assist in eliminating future acts of domestic violence and abuse, dating violence and abuse, stalking or sexual assault, <u>No Post on social media referencing Ms. Brown, "Ex" or using her name in any likeness or property. . . . No 3rd party, social media or electronic contact.</u>[3]

That language is not overbroad. We find no error.

Accordingly, we affirm.

---

[3] The underlined portion is handwritten.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Eric C. Eaton
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jennifer McVay Martin
Lexington, Kentucky